Filed 11/3/21  P. v. Nelson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092265 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE011508) |
| v. | |
| MIESHA NELSON et al., | |
| Defendants and Appellants. | |

Angry at her brother's ex-girlfriend Renee T., defendants Miesha Nelson and her cousin Tameshia Hayes broke into Renee's residence and assaulted her.  A jury found Nelson guilty of first degree burglary (Pen. Code, § 459),[1] sustained an allegation that a person other than an accomplice was in the residence during the burglary (§ 667.5, subd. (c)(21)), and found her guilty of simple assault (§ 240).  Hayes was found guilty of simple assault.  The trial court sentenced Nelson to a suspended four-year term and

---

[1]     Undesignated statutory references are to the Penal Code.

1

placed her on five years' formal probation. Imposition of sentence was suspended for Hayes and she was placed on three years' informal probation.

On appeal, Nelson contends admission of photographic evidence of the victim two weeks before the incident violated her rights to due process and a fair trial, the no contact order should be modified to include a knowledge requirement, certain probation conditions limiting constitutional freedoms should be stricken or modified, and the minute order should be corrected to reflect the trial court's oral judgment. Hayes contends the stay-away order should be modified to include a knowledge requirement and ending date, and the minute order should be corrected to reflect the pronounced judgment.

The photographic evidence was relevant and not unduly prejudicial; its admission was not an abuse of discretion and therefore did not deprive Nelson of her constitutional rights. The complained of no contact orders and probation conditions need no modification, as the necessary knowledge requirement to render them constitutional will be implied, and the no contact order can run only as long as the term of probation. We shall order corrections to the minute order and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

Renee T. began dating Daytrin Foy in 2017. They had a daughter in December 2017. Foy assaulted Renee on April 28, 2018, fracturing the orbital bone around her left eye. Renee subsequently broke up with Foy and obtained a restraining order against him.

Foy's sister, defendant Nelson, tried to contact Renee between the day of Foy's assault and May 11, 2018. Renee did not respond.

On May 11, 2018, Renee was recovering from her injuries in her Sacramento apartment with her daughter and her sister Tiffany T. At around 5:00 p.m., Nelson rang the doorbell; Renee did not answer as she did not want to talk to Nelson.

2

Nelson started knocking aggressively on the door while yelling for Renee. A fearful Renee placed her daughter in a bassinet in the bedroom closet. She looked out the window to see Nelson, defendant Hayes, and a woman named Denaija outside her apartment.

The three people outside Renee's apartment began yelling obscenities and telling her to open the door. Renee sternly told them she had nothing to say and they should go away. Both defendants then started yelling that Renee had Foy's belongings and Foy wanted to see his daughter. Renee responded by throwing a copy of the restraining order out the balcony window.

Renee's sister called their mother, who told them to call the police. As Renee called 911, Nelson kicked in the front door and entered the apartment with Hayes and Denaija. Nelson walked up to Renee and aggressively asked her what happened between Renee and Foy on April 28. While Nelson continued to converse aggressively with Renee, Hayes took Renee's phone from her hands and put it on the kitchen counter. After Renee tried to lunge between Nelson and Hayes to get her phone, Hayes punched Renee in the center of her face. When Renee grabbed Hayes to stop from stumbling, Hayes grabbed her by the hair. Nelson then started punching Renee in the back and the back of her head. During the attack, Hayes pulled Renee's hair so hard it came out of her scalp.

The attack lasted for about four minutes. It ended when the apartment manager came with a crowbar, separated the defendants from Renee, and told them to leave.

Police responding to the scene found Renee was emotional and crying. The front door frame and a mirror in Renee's apartment were damaged. Renee declined medical attention. She subsequently told an interviewing detective that she sustained a bald spot on her head, but the detective could not see the bald spot.

*The Defense*

Called by Nelson, Sacramento County Sherriff's Deputy Alfonso Ceja took a statement from Renee's sister Tiffany on the day of the incident. Tiffany told him that three black females, one of whom was Nelson, kicked down the door and entered the apartment. The deputy did not recall Tiffany saying Nelson attacked Renee, but Tiffany did say that the individuals took Renee's phone and started attacking her.

Testifying on her own behalf, Nelson said she first met Renee when she started dating Nelson's brother Foy around 2016. Nelson regularly saw Renee and would try to help Renee and her brother when they got into arguments. She treated Renee and her daughter like family and included them in family gatherings.

Following the incident with Foy and Renee, Nelson became increasingly concerned and tried to reach out to Renee multiple times to see if she was okay. She decided to go to Renee's apartment to check on Renee when she did not respond. Nelson and her cousin Hayes agreed to go to Renee's apartment after work on May 11. Nelson's cousin Denaija also agreed to come; they did not intend to confront Renee or try to get Foy's belongings.

Nelson knocked on Renee's door once they arrived. When she heard a lot of noise and a big thump from the apartment, Nelson became worried that Renee and Foy were fighting again. Nelson started knocking on the door and telling Renee to open it after she heard Renee's voice become loud and alarming. Nelson continued to knock on the door and leaned on it, which caused the door to break open.

Renee yelled at Nelson for breaking her door; Nelson apologized and told her she would take care of it. Renee became enraged as the situation escalated. Hayes walked through the door, while Renee was screaming about Foy. Renee was continuously looking at her phone during this, so Hayes took it to try to get Renee to focus and calm down.

4

After talking a little bit more about Foy, Renee lunged towards Hayes and they started fighting. Nelson calmly tried to separate the two, and they eventually let go. Nelson touched Renee only to separate her from Hayes.

Hayes testified on her own behalf and said she had a very friendly relationship with Renee before the May 11 incident. She went to Renee's apartment because she was worried about Renee and her baby. She had no plan to fight Renee.

Hayes checked for Renee's car while Nelson knocked on Renee's front door. Upon returning to Renee's apartment, Hayes saw the front door was open and Renee and Nelson were "going back and forth." Renee was pacing and fondling her phone, so Hayes grabbed it and placed the phone on the counter. Renee continued to argue for a few minutes and then knocked Hayes's glasses off her face. Hayes tried to block Renee; they eventually grabbed each other's hair. Her hand contacted Renee's face when she tried to block her, but Hayes was not trying to punch her. Hayes and Renee eventually started hitting each other.

Called by Hayes, the deputy who interviewed Renee on the day of the assault testified that Renee reported no injuries. Renee told the deputy Nelson hit her first and did not report Hayes hitting her. Renee did not say anything about someone kicking in the door.

## DISCUSSION

### I

### *Victim Photographs*

Nelson contends it was an abuse of discretion and a violation of her due process rights to admit photographs taken of Renee before the attack. We disagree.

A. *Background*

Before trial, the defense moved to exclude photographs of Renee taken following the domestic violence incident with Foy.[2] The prosecutor stated he showed counsel four photographs, two of which were from the prior domestic violence case. One picture was a frontal view that showed a black eye which, according to the prosecutor, was still visible at the time of the incident in this case. The second photo from the incident with Foy was a side view of Renee showing her hairline, with no visible injuries.[3] The prosecutor said the photograph of the black eye showed no blood, scratches, or stitches. The prosecution sought to admit this and the hairline photo to demonstrate the injuries Renee sustained in the current attack. The photograph of the eye demonstrated Renee was more susceptible to great bodily injury at the time of the assault, while the hairline photo showed she sustained injuries to her hair. The defense countered that the injury to the eye in the photograph was fresh, and had gone substantially down at the time of the incident in this case. Defense counsel argued that the hairline photograph was unnecessary as there was video from the day of the incident showing the victim's hairstyle. The photos were taken 13 days before the incident between defendants and Renee.

The trial court found the photographs admissible to show the victim's unusual susceptibility to injury, and this relevant to the assault by means of force likely to cause great bodily injury charge. (§ 245, subd. (a)(4).)

B. *Analysis*

"We review the trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code section 352, including photographic evidence, for abuse

---

[2] Hayes's counsel made the motion to exclude, which Nelson's counsel later joined.

[3] The third and fourth photographs were objected to as blurry, and are not at issue in this appeal.

of discretion. [Citations.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1198.) Evidence is inadmissible under section 352, "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Evidence is unduly prejudicial if it uniquely tends to evoke an emotional bias against a party as an individual, or if it would lead the jury to prejudge a person or cause on the basis of extraneous factors. (*People v. Foster* (2010) 50 Cal.4th 1301, 1331.) We will not disturb such rulings "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Nelson asserts the evidence was cumulative, as there were recent pictures of Renee's injuries that would better depict the harm she sustained on the day in question. She finds the photographs served only to inflame the passions of the jury to convict her for the weaker counts. Asserting the erroneous admission infused the trial with unfairness and deprived her of due process, Nelson concludes that the prejudice here was particularly clear in light of the weakness of the prosecution's case.

Photographs of a victim before the attack are relevant to show the extent of the harm caused by the defendants. (*People v. Cole, supra*, 33 Cal.4th at p. 1198.) As the trial court correctly found, the photograph of Renee's eye was relevant to show she was particularly susceptible to serious injury to her eye.[4] The photograph of her hairline is likewise relevant to show the extent of the injuries to her hair and scalp.

---

**4** Although 13 days transpired between the photograph and the attack, there was no evidence that the injuries had fully healed when defendants assaulted Renee. Furthermore, since the injuries in the photograph were inflicted by defendants' brother and cousin, a jury could reasonably infer that defendants had some knowledge of the nature of the injuries Renee sustained before the attack.

We also find the photographs were not unduly prejudicial. The hairline photograph showed no injury. While the photograph of Renee's face showed a severely black eye that was almost swollen shut, the prejudice against Nelson is reduced because the injuries were inflicted by Nelson's brother, Foy, instead of Nelson, and because the jury already knew that Foy inflicted those injuries on Renee.

From this balance of probative value and prejudice, we conclude it was not an abuse of discretion to admit the photographs. Accordingly, we similarly reject Nelson's argument that the court's ruling violated her right to due process. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 998 [proper application of the rules of evidence ordinarily does not violate due process].)

II

*Probation Conditions*

Nelson and Hayes both assert certain probation conditions should be stricken as unconstitutional or modified to include scienter, either a knowing or a knowing and purposeful requirement. The ones in question are probation conditions requiring each defendant to not to be within 100 yards of Renee and not to contact her[5]), and conditions prohibiting Nelson from having firearms or related devices[6] and requiring her to inform

---

[5] The minute order for Hayes' probation stated: "No contact with victim" and "[s]tay 100 yards from victim." Nelson's probation order stated: "Defendant shall have no contact whatsoever with the victim or the victim's family without prior permission of the probation officer" and "Stay 100 yards away from Renee."

[6] "The defendant shall not own, possess, purchase, or have under his or her custody and control a firearm, ammunition, ammunition feeding device, including but not limited to magazines." Another condition also forbids knowing possession of firearms or loaded ammunition as mandated by sections 29800, subdivision (a)(1) and 30305.

the probation officer within 24 hours of having potentially harmful pets.[7]  Hayes further asserts her no contact order must include a termination date.

Since defendants' challenges go to the facial constitutionality of the probation conditions, the failure to object to the conditions in the trial court does not forfeit the contentions.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889.)

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]" (*In re Sheena K., supra*, 40 Cal.4th at p. 890.)  A probation condition may not be so vague that "people of 'common intelligence must necessarily guess at its meaning and differ as to its application.'  [Citations.]"  (*People v. Hall* (2017) 2 Cal.5th 494, 500 (*Hall*).)

"California case law already articulates not only a general presumption that a violation of a probation condition must be willful, but also specifically provides that probation conditions barring possession of contraband should be construed to require knowledge of its presence and its restricted nature.  [Citation.]"  (*Hall, supra*, 2 Cal.5th at p. 501.)  Just as courts will imply the necessary scienter for a criminal statute fails to expressly do so (see *ibid.*), courts will also imply a necessary knowledge element not stated in a condition of probation:  "Because no change to the substance of either condition would be wrought by adding the word 'knowingly,' we decline defendant's invitation to modify those conditions simply to make explicit what the law already makes implicit."  (*Id.* at p. 503.)

Although *Hall* addressed probation conditions prohibiting possession of firearms and narcotics (*Hall, supra*, 2 Cal.5th at p. 497), its rationale applies equally to limits on

---

**7**     "Inform Probation Officer of dogs and other pets with potential to cause harm in the residence.  Notify of changes within 24 hours."

9

association, at least where the condition sufficiently specifies the person or persons the defendant is not to associate with or contact (see *id.* at pp. 502-503 [distinguishing cases addressing conditions failing to specify which persons the defendant was not to associate with]; *People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1128 [extending *Hall* to imply knowledge requirement to prohibition on entry into certain types of locations, attempt to limit *Hall* to possession of contraband conditions "is a distinction without a difference"]). It likewise applies to the directive regarding dangerous pets. While the conditions defendants complain of can be violated only knowingly, failure to include scienter is not fatal as the law necessarily implies the requirement.

Hayes's contention regarding the length of the no contact order is similarly unnecessary. Since the order is a condition of probation, it naturally expires when her probation ends. (*People v. Gilchrist* (1982) 133 Cal.App.3d 38, 44 [court cannot impose condition of probation lasting longer than the probation term].) The condition in question thus implicitly ends when the probation term ends.

III

*Minute Orders*

Both defendants assert there are errors in the minute orders. Nelson notes the minute order stating the conditions of probation includes a no contact order and a requirement to attend a drug and alcohol program as probation conditions, but neither condition was imposed when judgment was pronounced. In addition, the minute order states Nelson is to have no contact with the victim's family, but there is no reference to this on the court's judgment. Hayes claims that while the minute order includes a no contact order, the trial court referred to it only in the context of the court's explanation for why it was imposing a search condition. Hayes asks for the minute order to be corrected to reflect the pronounced judgment and imposition of any no contact order "must be clarified to set forth with sufficient certainty the requirements of this condition."

10

Hayes is wrong. The trial court ordered Hayes to have "no contact to the victim" and to "remain a hundred yards away." In her reply brief, Hayes admits the court did address the no contact order when it pronounced judgment, but nonetheless reiterates her claim regarding the condition's clarity. As previously stated, the minute order states: "No contact with victim" and "[s]tay 100 yards from victim." This reflects the court's judgment, and since we imply a knowledge requirement, it is sufficiently precise.

We agree with some of Nelson's contentions regarding the minute order. At sentencing, the trial court noted that it intended to follow the recommendations in the probation report and that any deviations from the report would be specifically stated by the court. The probation report states defendant is to have no contact with Renee without prior approval of the probation officer. Next to this statement is a handwritten note: "Stay 100 yds away." Although the trial court did not mention the no contact order or the 100-yard stay-away zone, the court incorporated the probation report. While the 100-yard zone is referred to only in the handwritten note, in light of the trial court's imposition of this same zone to Hayes, who was sentenced before Nelson, we find the court incorporated both the printed and handwritten references to the no contact order and 100-yard zone in the probation report. We do agree with Nelson that the order must omit any reference to the victim's family, as the stay-away order in the probation report refers only to the victim and not her family, and the court's pronouncement likewise does not address the victim's family.

Nelson is also correct regarding the drug and alcohol treatment condition. The minute order includes the condition: "Defendant [shall] participate in an evidence based drug/alcohol intervention program under the direction of the probation officer, to include chemical treating of the blood, breath or urine as directed by the probation officer." The probation report does not mention this requirement and the trial court did not mention it at sentencing.

11

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. [Citations.]" (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We shall order the trial court to prepare a corrected minute order reflecting the judgment imposed.

## DISPOSITION

The judgments are affirmed. With regard to defendant Nelson, the trial court is directed to prepare a corrected minute order omitting any reference to the drug and alcohol treatment program probation condition, and deleting any reference to Nelson staying away from the victim's family. The court is further directed to inform the relevant parties of the changes as needed.


_____\s\_____,
BLEASE, Acting P. J.



We concur:



_____\s\_____,
MURRAY, J.



_____\s\_____,
RENNER, J.



12